96 N.J. Super. 532 (1967)
233 A.2d 650
TOWNSHIP OF WOODBRIDGE, A MUNICIPAL CORPORATION, PLAINTIFF-APPELLANT,
v.
MIDDLESEX COUNTY BOARD OF TAXATION, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 3, 1967.
Decided July 7, 1967.
*533 Before Judges LEWIS, LABRECQUE and COLLESTER.
*534 Mr. Leo Rosenblum argued the cause for appellant, Township of Woodbridge.
Mr. Leon S. Wilson, Deputy Attorney General, argued the cause for respondent, Middlesex County Board of Taxation (Mr. Arthur J. Sills, Attorney General of New Jersey).
Mr. Stanton L. Levy argued the cause for respondent, Township of East Brunswick.
The opinion of the court was delivered by LABRECQUE, J.A.D.
The Township of Woodbridge appeals from the affirmance by the Division of Tax Appeals of the table of equalized valuations adopted by the Middlesex County Board of Taxation (County Board) for the year 1966.
In City of Perth Amboy v. Middlesex County Bd. of Taxation, 91 N.J. Super. 305 (App. Div. 1966), certif. denied 48 N.J. 112 (1966), the table of equalized valuations adopted by the Middlesex County Board of Taxation for the year 1965 was affirmed notwithstanding the argument advanced that use by the County Board of the "unweighted" approach, referred to, infra, in determining the average ratio of assessed to true value of real property within the county, was in error. Woodbridge Township, which was a party to that appeal, raises the issue again, based upon new and additional proofs.
The purpose of equalizing valuations within a county is to secure an equitable allocation of the cost of county government on the basis of the true value of the ratables in each municipality therein. Specifically, Woodbridge contends that by reason of the erroneous use of the unweighted approach it has been required to pay $170,522.23 in excess of its proper share.
The county formulates its annual equalization table by use of the ratio of assessments of real property in each municipality to the true values thereof. By application of the ratio found to be applicable to a municipality to the *535 aggregate assessments returned by its municipal assessor, the County Board determines the aggregate true value of its taxable real property.
Prior to the year 1965 the County Board had used what is commonly known as the weighted, or classified, method in arriving at true value for equalization purposes. This was, and is still, the same method utilized by the Director of the Division of Taxation in his preparation of the table of equalized valuations used in the allocation of State school aid to local school districts. N.J.S.A. 18:10-29.30 et seq. It involved a review of all usable sales of real estate taking place in a municipality during a fixed period and their allocation to one of the following categories: (1) vacant land, (2) residential (four dwelling units or less), (3) farm, and (4) all other (including commercial, industrial, apartments, etc.). The average ratio for each category was then determined by dividing the aggregate of the sales prices of all sales in each category into the aggregate assessments levied upon the properties sold, and then applying the ratio thus found to the aggregate of the assessments levied upon all property in that category. The equalized valuations arrived at as to each of the four categories were then added up and the total found was then divided into the total of assessed valuations of the municipality to produce the final ratio. Manifestly this method emphasizes the amount of money involved in each sales transaction and by its use a large sale at a higher ratio may have an important impact upon a group of small sales at lower ratios.
Since the year 1965 the County Board has utilized what has come to be known as the unweighted method. This also begins with a study of each of the reported sales utilized in the weighted method, but calls for a determination of the ratio of assessment to sales price as to each sale in a given municipality. The individual sales ratios thus arrived at are added up and, then divided by the number of sales, to arrive at an average ratio to be applied to its total ratables. As will be noted, this method gives equal recognition or *536 weight to each sale regardless of the amount of money involved. The unweighted ratio is used to determine the "common level" in connection with the taxation of tangible personal property used in business. N.J.S.A. 54:4-11.
The equalization process is intended to produce the aggregate assessable real property in each municipality in the county for the purpose of intermunicipal apportionment in the county tax burden for that year. The statute, N.J.S.A. 54:3-17, provides no specific plan or method to be followed by the County Board in the carrying out of this function and any reasonable and efficient method may be adopted. Carteret v. Borough of Division of Tax Appeals, 40 N.J. Super. 439, 446 (App. Div. 1956), certif. denied sub nom. Borough of Sayreville v. Division of Tax Appeals, 22 N.J. 224 (1956). The purpose of the equalization process is to minimize "so far as possible the unfair distribution of the county tax which is one result of varying average assessment ratios" among the municipalities within the county. City of Passaic v. Passaic County Bd. of Taxation, 18 N.J. 371, 381 (1955). Exactitude is not required and a degree of imperfection is tolerated  principally because individual assessments are not affected by the table. Carteret v. Division of Tax Appeals, supra, 40 N.J. Super., at pp. 446-447.
Upon appeal to the Division of Tax Appeals from a county equalization table the Division is charged with the identical function vested in the County Board in the first instance and where it is made to appear that the County Board was in error it becomes the duty of the Division to correct the error and promulgate a proper table. City of Passaic v. Passaic County Bd. of Taxation, supra, 18 N.J., at p. 393. After its review of the table the action of the Division is presumed to be correct and the courts will not interfere in the absence of an affirmative showing that it acted arbitrarily, capriciously or unreasonably. Carteret v. Division of Tax Appeals, supra, 40 N.J. Super., at p. 448.
Here the only challenge to the table is directed to the use of the unweighted rather than the weighted method. *537 We hold that plaintiff's proofs fail to establish that use of the unweighted method by the County Board was arbitrary, capricious or unreasonable or that it was error as a matter of law to use that method as contradistinguished from the one advocated by it.
By the present appeal we are not called upon to determine which of the two methods is the better one or which is best adapted to the conditions prevailing in Middlesex County. The process of preparing an equalization table is a quasi-legislative one. Borough of Little Ferry v. Bergen County Bd. of Taxation, 18 N.J. 400, 404 (1955). As noted, any reasonable and efficient method of equalization may be adopted. The Director's table authorized by N.J.S.A. 18:10-29.33, which uses the weighted approach, is not intended to control the distribution of the county tax burden but serves as a standard on which to base the allocation of State funds to school districts, where the amount allocated to one district in no wise effects other districts. In the case of county equalization a reduction in the amount paid by a taxing district towards the cost of county government requires that the difference be made up by the remaining districts.
Plaintiff's case is principally buttressed upon the testimony of Dr. Lynn L. Merrill, an expert in the field of mathematics. We find it unconvincing so far as it relates to the issues before us. Dr. Merrill was undoubtedly highly qualified in his field but possessed no expertise or particular interest in the fields of real estate appraisal, assessment or equalization. While he testified that given a "representative sample" the weighted ratio would always produce the correct result and the unweighted ratio an incorrect one, the impression was left that this conclusion depended upon the samples being absolutely representative, i.e., constitute the universe in miniature. Mrs. Yahnel, the County Board's expert, was of the opinion that the sales samples "never are" the universe in miniature and that the unweighted ratio was not so easily distorted by errors in sampling information.
*538 We are mindful of the fact that the process of equalization is not an exact science. It is intended to reconcile wide differences in assessment practices and is not always capable of strict scientific admeasurement. Acting Director of the Division of Taxation Kingsley and Supervisor of the Local Property Tax Bureau Hart, while favoring the weighted approach, were unwilling to state that the use of the unweighted ratio was incorrect or worked an unfair hardship on municipalities. The mere fact that plaintiff would benefit financially by use of the former is not enough to proscribe the use of the latter method. We are here concerned with the effect of use of the unweighted method upon all of the taxing districts in the county. However preferable it may be from an administrative standpoint that all counties use the same approach, we find no precedent which compels this result.
Plaintiff has failed to establish that the Division erred in sustaining the County Board. We are not convinced that use of the unweighted method was unreasonable or inefficient, or that it produced an unjust or inequitable apportionment of the intermunicipal cost of county government.
Affirmed.