115 N.J. Super. 115 (1971)
278 A.2d 424
TOWNSHIP OF LITTLE FALLS, BOROUGH OF POMPTON LAKES, BOROUGH OF RINGWOOD, BOROUGH OF TOTOWA, BOROUGH OF WANAQUE, TOWNSHIP OF WAYNE, TOWNSHIP OF WEST MILFORD, AND BOROUGH OF WEST PATERSON, ALL MUNICIPAL CORPORATIONS OF NEW JERSEY, PETITIONERS-APPELLANTS,
v.
PASSAIC COUNTY BOARD OF TAXATION, RESPONDENT-RESPONDENT, AND CITY OF CLIFTON, CROSS-PETITIONER-RESPONDENT, AND DIVISION OF TAX APPEALS, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 1971.
Decided June 15, 1971.
*117 Before Judges GOLDMANN, LEONARD and FRITZ.
Mr. Charles H. Landesman argued the cause for appellants.
Mr. Herbert K. Glickman, Deputy Attorney General, argued the cause for respondents Passaic County Board of Taxation and the Division of Tax Appeals (Mr. George F. Kugler, Jr., Attorney General, attorney; Mr. Elias Abelson, Assistant Attorney General, of counsel; Mr. Richard M. Conley, Deputy Attorney General, on the brief).
Mr. Frank A. Carlet, First Legal Assistant, argued the cause for cross-petitioner-respondent (Mr. Arthur J. Sullivan, Jr., City Counsel, attorney).
*118 The opinion of the court was delivered by GOLDMANN, P.J.A.D.
Petitioner municipalities appeal from a determination and judgment of the State Division of Tax Appeals which affirmed the Passaic County equalization table for 1970 and dismissed their appeal from that table.
Respondent county board of taxation had on January 27, 1970 promulgated the 1970 preliminary equalization table wherein the aggregate true value for each revalued taxing district was determined by applying the so-called "page 8 formula." There were ten such revalued taxing districts, and by using the formula the real property ratio of aggregate assessed value to aggregate true value was in excess of 100% for each petitioner.
The county board promulgated the 1970 revised final equalization table on March 13, 1970. The board did not use the page 8 formula for revalued taxing districts in that table, but assigned a ratio of 100% to each of them. With respect to districts that had not revalued, the county board used the state school aid table promulgated by the Director of the Division of Taxation pursuant to N.J.S.A. 54:1-35.1, in order to arrive at their respective ratios and true values. The result of not using the page 8 formula in the final table was to raise the aggregate true value of each petitioner from that shown in the preliminary table.
On April 9, 1970 petitioners appealed the revised final equalization table to the Division of Tax Appeals. The City of Clifton filed an answer and cross-petition on April 27, 1970. Meanwhile, on April 20 the county board of taxation held a meeting, on notice to all municipalities, and ratified and confirmed the final table.
The Division held a hearing June 4 and 12, 1970 on petitioners' appeal and Clifton's cross-appeal. Judge Convery sat for the entire Division and eventually filed his report recommending that judgment be entered affirming the final equalization table for 1970. That report was approved by the Division and judgment entered affirming the *119 table. We are in agreement with the Division's determination, based on the reasons set out in Judge Convery's findings and conclusions.
Eight of the ten municipalities that appealed to the Division prosecute the present appeal. They launch a two-pronged attack, claiming that (1) the county board erred in raising their valuations in the final table because it failed to give petitioners the required three days' notice, as provided in N.J.S.A. 54:3-18, and (2) the county board did not treat each taxing district in the county uniformly, but discriminated against the revalued districts by assigning them a ratio of 100% while at the same time assigning to nonrevalued districts a ratio based on the Director of Taxation's sales ratio study. This is characterized as arbitrary and capricious action, producing an unjust and inequitable apportionment of the inter-municipal cost of county government among the Passaic County taxing districts.
The county board frankly admits that it should have given the required three days' notice of the proposed adoption on March 13, 1970 of the revised final equalization table, but failed to do so because the experienced employee entrusted with that duty was critically ill.
Petitioners claim that the April 20, 1970 meeting to ratify and confirm the final table did not and could not remedy the situation. The county board, they say, was without jurisdiction to act, because at that moment the matter was on appeal to the Division.
What was done here was unusual, but neither illegal nor invalid. Having inadvertently failed to give the municipalities notice of the March 13 meeting, the county board was not prevented from correcting its error merely because petitioners had appealed to the Division. Compare Handlon v. Belleville, 4 N.J. 99, 106 (1950); Paterson v. Division of Tax Appeals, 40 N.J. Super. 543, 546 (App. Div. 1956), and cases cited. Petitioners attended the April 20 meeting, were invited to address themselves to the final table, and *120 took the position, restated here, that the county board lacked jurisdiction to proceed because of the pending appeal in the Division. None of the taxing districts made any effort to demonstrate that the revised final equalization table should not be ratified and confirmed.
Beyond this, the matter has been fully aired in the Division, where the basis for the data used was disclosed and the local representatives were given a fair opportunity to meet it. Cf. Little Ferry v. Bergen Cty. Board of Taxation, 18 N.J. 400, 403 (1955). All the answers and information necessary to a just determination by the Division  and presently by this court  appear in the record. Petitioners have failed to demonstrate the inaccuracy or inequity of the final table as it relates to each of them.
Turning to the discrimination question, we know that the purpose of equalization is to secure a fair distribution of tax burdens common to municipalities. Passaic v. Passaic Cty. Board of Taxation, 18 N.J. 371, 381 (1955). When a county tax board exercises its equalization function, that action is legislative or quasi-legislative in nature, the Legislature having delegated that function in lieu of its own direct apportionment of county taxes. Id. at 384. Further, a county board may, in the performance of the legislative equalization function, consult and rely upon a variety of data. Little Ferry v. Bergen Cty. Board of Taxation, above, 18 N.J. at 404. Any reasonable and efficient method may be adopted, for the Legislature has provided no specific plan or method for carrying out the equalization function. Woodbridge v. Middlesex Cty. Board of Taxation, 96 N.J. Super. 532, 536 (App. Div. 1970).
We see nothing wrong in the county board's having decided to establish the ratio of each revalued and re-assessed taxing district at 100% and, for the other taxing districts, to use the percentage established for that district by the Director of the Division of Taxation in his 1969 table of equalized valuations. The board's action was, of course, entitled to the presumption of correctness, and that *121 presumption could only be overcome by the production before the Division of sufficient evidence that was definite, positive and certain in quantity and quality. Perth Amboy v. Middlesex Cty. Board of Taxation, 91 N.J. Super. 305, 309 (App. Div. 1966). The Division, on appeal, has the same responsibility as the county tax board had in the first instance  and that is to determine whether the equalization table is in error and, if so, to correct the table. The Division did just that and determined that petitioners had not overcome the presumption of the correctness of the table. We will not interfere with the Division's determination in the absence of an affirmative showing that it acted arbitrarily or unreasonably. Woodbridge v. Middlesex Cty. Board of Taxation, above, 96 N.J. Super. at 536.
The hard fact of this case is that the 100% ratio used for the revalued districts represents true value, and this was admitted by petitioners at the Division hearing. Moreover, limited sales ratio studies based on assessed valuations subsequent to the revaluations indicated that all of petitioners' assessments were at just about 100%. There can therefore be no complaint insofar as the figure for each petitioner is concerned. Nor can petitioners complain about the figures used for taxing districts which had not revalued, for the school aid ratio prepared by the Director of Taxation has been approved by our courts as an equalization measure. Petitioners have merely shown that the county board utilized different methods and sources of determining the aggregate true values for the taxing districts of Passaic County. This the board was free to do, for all that was required of it was to carry out the equalization function in a reasonable and efficient manner.
In light of our determination, there is no point in discussing petitioners' additional argument that the Division should have revised the Passaic County table by applying the page 8 formula to all districts.
Affirmed.